[Civ. No. 17414.   First Dist., Div. One.   Nov. 12, 1957.]

JOSEPH B. ENOS, JR., Respondent, v. C. LOUIS FOSTER, as Executor, etc., Appellant.

Donahue, Richards, Rowell & Gallagher and Donahue, Richards & Gallagher for Appellant.

Kessler & Kessler and Kessler, Kessler & Greenberg for Respondent.

BRAY, J.—Plaintiff's motions to strike defendant's answer, for summary judgment and judgment on the pleadings, were granted. Defendant appeals from the judgment entered thereon.

## QUESTIONS PRESENTED

Was plaintiff lessee entitled to apportionment of damages as provided in the lease or merely to the amount awarded him by the condemning power? The solution of this question depends upon whether or not paragraphs 17 and 26 of the lease are interdependent.

RECORD

February 2, 1947, Louise S. Pheby, defendant's testate, leased to plaintiff certain real property in Berkeley for a period beyond the date of the events causing this action. February 21, 1955, Mrs. Pheby, to avoid an action in eminent domain and for the sum of $52,500, transferred to the city of Berkeley all her right, title and interest in this property. Later, the city filed an action to condemn plaintiff's leasehold interest therein, as a result of which plaintiff received $12,200. Thus the total received by both parties was $64,700. Plaintiff then brought this suit claiming that by reason of paragraph 17 of his lease (hereafter set forth) he was entitled to 15/40ths of the $64,700, or $24,262.50, upon which sum he credited the $12,200 received from the city of Berkeley, leaving a balance due of $12,062.50.

Defendant's amended answer denied that plaintiff was entitled to 15/40ths of the entire recovery and as a separate defense set up a failure of plaintiff to comply with paragraph 26 of the lease, requiring the construction of a certain building. Plaintiff then filed motions to strike out defendant's answer, for summary judgment and/or judgment on the pleadings on the ground that no defense was stated or could be stated.*

Paragraph 17 reads: ''Eminent Domain. That in the event the leasehold interest of the Tenant, or any possession thereof, or the whole or any part of said premises, or the property of which said premises form a part, shall be taken or lessened in value by right of eminent domain, or transferred in avoidance thereof, any damages for such taking shall be apportioned between the parties hereto as follows: 25/40 thereof to Landlord, and 15/40 thereof to Tenant. . . .''

Defendant concedes that this paragraph would apply to the circumstances of this case, were it not that defendant claims that plaintiff was in default under paragraph 26, and that compliance with paragraph 26 was a condition precedent to plaintiff's right to apportionment under paragraph 17.

Paragraph 26 provides: ''Tenant covenants and agrees that he will erect on the property herein demised a building having not less than 1,768 sq. ft. of floor space, which said

---

*Defendant in turn filed a motion for summary judgment on the ground that the complaint did not and could not state a cause of action. This motion defendant later dismissed. Accompanying plaintiff's motion for summary judgment were two affidavits purporting to show that plaintiff was not in default of paragraph 26 of the lease.

building is to be built in accordance with all building requirements, laws, ordinances and regulations. . . ." It further provides that the tenant will commence construction when materials, labor and plans are available and that upon the termination of the lease the building will become the property of the lessor.

In June, 1947, plaintiff was granted an extension of time to June 1, 1948, in which to commence construction. The extension stated: "All other terms and conditions contained in said lease are to remain in full force and effect, and granting of this concession is not to be construed to, nor does it alter or change any of the other terms or conditions contained in said lease."

February 24, 1948, a further modification of the lease was made providing that the building might contain only 600 square feet of floor space with the right of the tenant to enlarge the building at a future date. The clause continuing in effect all other terms and conditions of the lease was identical with the one above quoted. Plaintiff has never commenced construction of the building.

### Are Paragraphs 17 and 26 Interdependent?

There is no expression in the lease making them so. ■ Because of historical development, covenants in leases are held to be mutually independent unless the lease expressly or impliedly makes them conditional. (3 Williston on Contracts, p. 2520; Rest., Contracts, § 290; *Kulawitz* v. *Pacific etc. Paper Co.* (1944), 25 Cal.2d 664, 669 [155 P.2d 24]; *Arnold* v. *Krigbaum* (1915), 169 Cal. 143, 145 [146 P. 423, Ann.Cas. 1916D 370]; *Exchange Securities Co.* v. *Rossini* (1919), 44 Cal.App. 583, 585 [186 P. 828].) However, in *Medico-Dental Bldg. Co.* v. *Horton & Converse* (1942), 21 Cal.2d 411 [132 P.2d 457], it is stated that a lease has a dual character with two sets of rights and obligations. One set grows out of the relation of landlord and tenant and the other out of the " ' . . . express stipulations of the lease. . . .' " (P. 418.) ■ The contractual features are to be interpreted according to contract law and the basic principle that the intention of the parties should be given effect as far as possible, so that covenants in a lease are to be construed as independent or dependent according to the intention of the parties and the good sense of the case. The Medico-Dental case distinguishes factually both the Arnold and Exchange Securities cases, *supra,* but goes on to say that those cases are compatible with

a conclusion that covenants in a lease may be dependent. In the Medico-Dental case, the question was whether a covenant against leasing to a competitor was a condition precedent to the obligation to pay rent or for renovating after vacating the premises. As in the later Kulawitz case, *supra,* the decision in the Medico-Dental case was based upon the fact that the breach of a covenant against leasing to the tenant's competitor went to the whole of the consideration for the lease and hence was necessarily a condition to the lessee's obligation to pay rent. Thus, the covenants were impliedly made interdependent in the lease. In our case it cannot be said that the obligation to build the building went to the whole of the consideration for the lease. ■ That the covenants were not interdependent is shown by: (1) The failure to expressly make them so. (2) No connection in time between the performance of either covenant. (3) The subsequent modification of the size of the building without a corresponding change in the apportionment ratio. Under this, the building was to be only one-third of the size originally provided. Not only was no change made in the proportionate shares to be received under paragraph 17, but the modification expressly stated that all other terms and conditions of the lease were to remain unchanged. (4) No provision for insurance for reconstruction of the building in the event of fire or other destruction, or for change of rate of apportionment in such event. (5) The value of the lease to the tenant even without a building on the property. The lease was a long term ground lease, for 15 years plus an option for an additional 10 years. The rent was only $100 per month for the first 15 years and not to exceed $150 per month for the additional 10 years if the option were exercised. There was no restriction on the use of the premises. The tenant had the privilege of first offer and refusal in the event of sale by the lessor. There was no restriction on the right of lessee to sublet or assign the lease. Other buildings could be constructed and alterations made by tenant in any building without consent of landlord. (6) The fact that at no time did the lessor ever complain of the failure of plaintiff to construct the building.

### Propriety of Granting Summary Judgment

■ In considering a motion for summary judgment the province of the court is issue finding rather than issue determination. ■ If the court finds a triable issue, then it is powerless to continue but must allow the issue to be tried by a jury, unless a jury trial is waived. (*Walsh* v. *Walsh*

(1941), 18 Cal.2d 439, 441 [116 P.2d 62]; *Schulze* v. *Schulze* (1953), 121 Cal.App.2d 75, 81 [262 P.2d 646]; *Eagle Oil & Ref. Co.* v. *Prentice* (1942), 19 Cal.2d 553, 555 [122 P.2d 264].) ■ And the question of issue finding is to be determined by the sufficiency of the affidavits of the parties. (Code Civ. Proc., § 437c; *Dorsey* v. *City of Los Angeles* (1955), 132 Cal.App.2d 716, 719 [282 P.2d 997].)

Defendant concedes that his affidavits did not raise any triable issue of fact, but insists that they did raise an issue of law as to the intention of the parties in regard to the pertinent provisions of the lease.* Since there was no conflict in the facts and no showing of extrinsic factors the interpretation of the lease was a matter of law for the court. ■ Where on a motion for summary judgment the issues are of law only it is the duty of the trial court to determine those issues. (*Bank of America* v. *Casaday* (1936), 15 Cal.App.2d 163, 168 [59 P.2d 444]; see also *Bromberg* v. *Bank of America* (1943), 58 Cal.App.2d 1 [135 P.2d 689] affirming summary judgment where only issues of law were presented.) Defendant practically concedes this rule of law by asking this court to interpret the lease as containing interdependent covenants, citing *Estate of Platt* (1942), 21 Cal.2d 343, 352 [131 P.2d 825]. We believe that the trial court properly interpreted the covenants as not interdependent.

■ Here the lease not being ambiguous, there was no triable issue of fact, and the court having properly interpreted the lease the summary judgment was proper.

In view of our determination that the summary judgment was proper, the question of the propriety of the judgment on the pleadings and the order striking the answer becomes moot, and the appeals from the order and the said last mentioned judgment are dismissed. The summary judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 6, 1958. Gibson, C. J., and Traynor, J., were of the opinion that the petition should be granted.

---

*If paragraphs 17 and 26 were interdependent, which they are not, the affidavits would have raised an issue of fact as to whether the defendant waived compliance with paragraph 26. This issue under the decision of the trial court and of this court is immaterial.