[L. A. No. 27468.   In Bank.   July 7, 1965.]

TOWNE DEVELOPMENT CO., Plaintiff and Appellant, v.
AL E. LEE et al., Defendants and Respondents.

Oshman, Brownfield & Smith, Richard Oshman and John Joseph Hall for Plaintiff and Appellant.

Jerome T. Stewart for Defendants and Respondents.

McCOMB, J.—The trial judge granted a summary judgment in favor of defendants in an action for specific performance of a contract for the sale of land. Plaintiff appeals.

A summary judgment is proper only if (1) the affidavits in support of the moving party are sufficient, strictly construed, to sustain a judgment in his favor and (2) the affidavits filed by the opponent, liberally construed, do not show facts deemed by the judge hearing the motion sufficient to present a triable issue. (Code Civ. Proc., § 437c; *Stationers Corp.* v. *Dun & Bradstreet, Inc.*, 62 Cal.2d 412, 417-418 [1-7] [42 Cal.Rptr. 449, 398 P.2d 785].)

As pointed out in *Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* 62 Cal.2d 412, 417 [3], "The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial."

In the present case, as will hereinafter appear, the affidavits before the trial court showed that triable issues were presented to it. Accordingly, under the foregoing rules it was improper to grant a summary judgment.

In its complaint, plaintiff, a corporation licensed as a general building contractor, alleged, as follows:

(1) Defendants owned a certain parcel of real property located in Los Angeles County, and on September 18, 1961, the parties entered into a contract for the sale of a portion of such property. The contract was partly written and partly oral.

(2) The written part of the contract consisted of escrow instructions, signed by the parties, wherein an escrow was opened with Golden West Escrow Company for the sale of the property to plaintiff for $18,000 cash on or before March 18, 1962.

(3) The oral portion of the contract provided that upon execution of the escrow instructions, plaintiff would imme-

diately attempt to obtain a rezoning of defendants' property "from A2 to R.S." and that defendants would reimburse plaintiff for the rezoning costs applicable to the portion retained by them.

(4) Thereafter, plaintiff caused necessary maps, engineering work, and documents to be prepared, and applied to the city planning commission for the rezoning of the property. After a public hearing on November 6, 1961, plaintiff's rezoning application was recommended for approval. On November 22, 1961, the city planning commission approved the recommendation, and on April 3, 1962, it approved the tentative tract prepared by plaintiff.

(5) On April 5, 1962, plaintiff informed defendants that it had complied with the conditions of said contract on its part and requested them to consummate the sale of the portion of their real property covered by the contract of sale and to reimburse plaintiff for the rezoning costs applicable to the portion retained by them.

(6) Plaintiff tendered the sum of $18,000 to defendants, but they refused to perform, although they still owned the real property and were able to perform.

(7) The sum of $18,000 was adequate and fair consideration for the land to be conveyed to plaintiff under the land sale contract, since the land was worth less than that amount before the rezoning.

Defendants filed a motion for summary judgment, supported by one affidavit, that of defendant Dorothy Lee, which stated: "DOROTHY LEE, being first duly sworn, deposes and says: That she is one of the defendants in the above entitled action; that she believes she has a good and valid defense to the plaintiff's action, based upon the following facts which, if sworn as a witness, affiant can and will testify to.

"That for three weeks prior to March 18, 1962, affiant and the husband of affiant, Al E. Lee, one of the defendants herein, tried repeatedly to contact Mr. Towne, the President of the plaintiff in this action, to ascertain if he intended to proceed with the closing of the escrow for the purchase of the property which is the subject of this action. That said Mr. Towne refused to see defendants or return telephone calls or to contact defendants in any manner whatsoever. That on March 23, 1962, these defendants notified the Golden West Escrow, in writing, by Registered Mail, that the escrow for the purchase of the property was canceled.

"That at no time has the plaintiff paid into the escrow or to either of the defendants $18,000.00 or any sums of money whatsoever, and at no time prior to the cancellation of said escrow did plaintiff make any tender of performance."

In opposition to defendants' motion for summary judgment, Mr. Towne, president of plaintiff, filed a supplemental affidavit stating in part as follows: "That between March 10 and March 18, 1962, affiant did attempt to tender the Eighteen Thousand Dollars ($18,000.00) to be paid in to the escrow which is the subject matter of the instant lawsuit, to Golden West Escrow, Incorporated, 15029 Roscoe Boulevard, Panorama City, California, their escrow number 1740; that he called the Escrow Company on several occasions to ascertain the correct amount of the tender, by virtue of the fact that the exact amount of money to be tendered would be uneven due to pro ration of taxes, insurance, escrow fees and other items; that on each of the occasions when he called the phone numbers of the Escrow Company during normal business hours, the phone was not answered;

"That upon ascertaining that the Escrow Company did not answer their phone calls, he sent his secretary, Mrs. Helen Stanley, to the premises of the Escrow Company at the above address, during regular business hours, and the said Mrs. Helen Stanley reported to affiant that she had contacted the neighbors of the Escrow Company and that they had told her that the place was closed;

"That during the said period of time between March 10 and March 18, 1962, after affiant ascertained that Golden West Escrow was closed or inactive, the defendant AL E. LEE called your affiant and advised him that the Golden West Escrow Company had gone out of business and that defendant said that defendant and affiant should go to a different Escrow Company to effectuate the purpose of the original escrow agreement; that at that time affiant agreed to do so and further, affiant told defendant AL E. LEE that he had not yet received the final City of Los Angeles Report Granting or Denying Re-zoning of the subject property at the time of defendant's call;

"That defendant AL E. LEE and affiant agreed at that time that an attempt to open another escrow would be unnecessary, unwise and wasteful and that defendant would wait until affiant received the Report Granting or Denying Re-zoning from the City of Los Angeles, County of Los Angeles, State of California, before opening another escrow; that affi-

ant did inform defendant that he had attempted to tender the necessary moneys into escrow prior to his ascertaining their being closed or their inactivity;

"That your affiant has read the affidavit of defendant DOROTHY LEE in support of the Motion for Summary Judgment; and that affiant did on numerous and diverse occasions during the period of three weeks prior to March 18, 1962, talk to the defendants AL E. LEE and DOROTHY LEE, and each of them, on the telephone; that at all times during these conversations affiant did tell defendants, and each of them, that he was most anxious to proceed with the purchase of the real property in question; and did further tell them of his attempted tender of the necessary purchase price; and further did tell them of the progress of the re-zoning matter: . . ."

Another affidavit filed by Mr. Towne on behalf of plaintiff showed the following facts regarding the outlay of moneys by plaintiff to obtain the rezoning of defendants' land:

"That pursuant to the said agreement plaintiff corporation filed the application for re-zoning at a cost of $135.00 for the application fee to the City of Los Angeles, further expended approximately $980.00 on an engineering subdivision report, which report was necessary for the re-zoning procedure, and further, pursuant to the agreement, expended approximately $900.00 for the design of certain structures to be erected upon the balance of the real property.

"That the City of Los Angeles did in fact approve the re-zoning of the said property pursuant to the application and efforts of the plaintiff, and did, on the 3rd day of April, 1962, give its final and written report concerning the said re-zoning, and did for the first time give the necessary conditions under which the City would allow the said re-zoning to be consummated."

From the above, it will be seen that Mr. Towne's supplementary affidavit states facts showing that plaintiff attempted to tender the $18,000 before March 18, 1962, but was prevented from doing so because the escrow company had gone out of business and because of an agreement before March 18, 1962, with defendants regarding a new escrow to be opened; that defendants knew that the escrow company had gone out of business before March 18, 1962, and knew that plaintiff had no opportunity to tender the $18,000 into escrow during the period of at least a week before that time; and that defendants suggested the parties go to a different

escrow company for the purpose of effectuating the original land sale contract and agreed to wait until plaintiff received the rezoning report before opening another escrow.

Under these circumstances, and under the rule of liberal construction required of the opposing party's affidavits, plaintiff has shown facts sufficient to raise a triable issue of excuse for failure to make payment of the $18,000 before March 18, 1962, at the very least.

Defendants' suggestion, relied on by plaintiff, that the parties go to a different escrow company to carry out the original contract and their agreement to wait until plaintiff received the rezoning report raise a triable issue as to whether defendants are estopped from attempting to cancel the contract and from asserting a breach of the contract by plaintiff after March 18, 1962. (See *Wilson* v. *Bailey,* 8 Cal.2d 416, 421-423 [1, 2] [65 P.2d 770] ; *Wilson* v. *Bidwell,* 88 Cal.App.2d 832, 835-836 [1] [199 P.2d 439].)

Under the express terms of section 1511 of the Civil Code, plaintiff's performance or tender thereof is excused if it was caused by defendants' conduct. Section 1511 was so interpreted in *Hulen* v. *Stuart,* 191 Cal. 562, 569, 570 [217 P. 750], under a factual situation analogous to the facts stated in plaintiff's affidavits opposing defendants' motion for summary judgment.

Plaintiff's affidavits state facts showing that plaintiff spent approximately $2,000 to obtain a rezoning of defendants' property, pursuant to the land sale contract. Plaintiff's complaint included a prayer for defendants' proportionate part of such costs. Further, the complaint alleges that the rezoning increased the value of the land. Thus, whether under the land sale contract or under the law of quasi-contract allowing recovery for the benefit to defendants' land, a triable issue of fact exists as to how much plaintiff should be reimbursed by defendants for the cost of the rezoning and the benefit resulting therefrom to defendants.

In view of the several triable issues of fact presented in plaintiff's affidavit, it is immaterial whether or not defendants' affidavit is sufficient to sustain a judgment in their favor.

The judgment is reversed.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.