[Civ. No. 535.    Fifth Dist.    Aug. 19, 1965.]

W. T. FUGATE, Plaintiff and Respondent, v. NEIL L. COOK et al., Defendants and Appellants.

Lewis A. Plourd for Defendants and Appellants.

Ewing & McKee for Plaintiff and Respondent.

CONLEY, P. J.—The trial court granted plaintiff's motion for a summary judgment pursuant to section 437c of the Code of Civil Procedure, and the defendants appealed.

Defendants, Neil L. Cook and Louise C. Cook, his wife, owned real property as joint tenants. About April 1, 1963, Mr. Cook signed a listing agreement purporting to employ plaintiff to procure a purchaser for the real property. He handed it to respondent's agent, J. C. Mealey, with the oral understanding, as he contends, that the agreement would have to be signed by his wife before it would take effect. This was never done.

Within the time specified in the contract, Mr. Mealey, acting for the plaintiff, obtained as a proposed purchaser for the property a Mr. Hutchinson, who made an offer to buy the real estate on terms which plaintiff claims were in compliance with the authorization. Mealey arranged for an escrow; in the escrow papers it was stated, over the signature of Hutchinson, that the balance of $30,000 was to be paid in yearly installments of "$5,000 or more." These instructions were approved and signed by Hutchinson, but when the document was presented to the appellants, they refused to approve it, stating, among other things, that the provision permitting a payment of more than $5,000 per year was contrary to the terms of the agreement which Mr. Cook had approved. Mr. Hutchinson refused to change the "or more" provision in the escrow papers, and sometime afterwards withdrew his offer to purchase the property.

The respondent made demand for the payment of a broker's commission, and when appellants refused, the action was started. Thereafter, following the filing of an answer, plain-

tiff made a motion for a summary judgment which was granted by the court. The judgment was against both defendants in the amount of $3,000, with interest and costs.

The code provisions for a summary judgment were never intended to eliminate the jury as a finder of fact in the ordinary circumstances of litigation, or to substitute a general shortcut for the trial of actions. ▪ As is said in *Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553, 556 [122 P.2d 264] : "The procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods in the determination of issues of fact."

▪ Certain very definite and stringent rules control the procedure provided by section 437c of the Code of Civil Procedure. The issue to be determined on a motion for summary judgment is whether in the affidavits in support of, and in opposition to, the motion there is shown a triable issue of fact; it is not the function of the trial judge to pass upon the validity of such an issue, but merely to ascertain whether the issue exists; if the answer to the question is affirmative, the court must deny the motion.

As is said in *Walsh* v. *Walsh,* 18 Cal.2d 439, 441 [116 P.2d 62] : "If it finds one [the existence of such an issue], it is then powerless to proceed further, but must allow such issue to be tried by a jury unless a jury trial is waived. By an unbroken line of decision in this state since the date of the original enactment of section 437c, the principle has become well established that issue finding rather than issue determination is the pivot upon which the summary judgment law turns." (See: *Wilson* v. *Bittick,* 63 Cal.2d 30, 34 [45 Cal.Rptr. 31, 403 P.2d 159] ; *Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785] ; *Towne Development Co.* v. *Lee,* 63 Cal.2d 147, 148 [45 Cal.Rptr. 316, 403 P.2d 724].)

▪ It is a working rule on motions of this kind that the affidavits for the moving party ". . . should be strictly construed and those of his opponent liberally construed." (*Eagle Oil & Ref. Co.* v. *Prentice, supra,* 19 Cal.2d 553, 556.)

▪ In granting the motion for summary judgment in the instant case, the learned trial judge necessarily determined to his own satisfaction that there was no issue to be tried. But the judge was clearly wrong, as shown by a comparison of the affidavits used upon the motion, and the judgment must be reversed.

In the first place, the defendants contended, rightly or wrongly, that there never was a contract between the plaintiff, Fugate, and either of the Cooks, because there was not an actual delivery of the writing signed by Mr. Cook. His contention, as shown by his affidavit, was that the contract was not to become effective unless and until his wife, Louise C. Cook, also signed the listing. In his affidavit, it is said that the listing contract ". . . was conditionally delivered to Mr. J. C. Mealey in that affiant told the said J. C. Mealey at the time and place he signed his name that affiant's wife, Mrs. Cook, would need to sign the said 'Listing' and furthermore affiant stated to Mr. J. C. Mealey at said time and place that he did not believe that affiant's wife would execute the 'Listing.'

"That said 'Listing' was given to Mr. Mealey on the express understanding between affiant and Mr. Mealey that it was not to take effect until Mrs. Cook had signed same."

The defendants thus contend that there was a condition precedent to the taking effect of the real estate contract which was not fulfilled, and that, consequently, there never was a legal contract between either of the defendants and the plaintiff. Evidence of this contention could be introduced orally and, if found to be correct, it would be a complete defense to the action. (*Spade* v. *Cossett*, 110 Cal.App.2d 782, 784 [243 P.2d 799]; *Fontana* v. *Upp*, 128 Cal.App.2d 205, 210 [275 P.2d 164].) This issue could be determined only upon the trial of the case, and, therefore, the summary judgment was not justified.

In addition to the foregoing, it was contended in the affidavit of Mr. Cook that the Hutchinson offer was not an acceptance of the terms of sale contained in the listing agreement. That document provided that the real property should be sold for the sum of $60,000, $30,000 down, and "Balance six years at 6% Int." The Hutchinson offer as set forth in the escrow papers was that he would pay $30,000 down, that the balance would be shown by a note for $30,000, bearing interest at 6 per cent per annum, and that ". . . principal will be paid in annual installments of $5,000 *or more*, commencing one year from close of escrow, and continuing annually until paid." (Italics added.)

The provisions of the listing agreement are not satisfactorily clear as to whether the phrase "Balance six years at 6% Int." called for a six-year deferment of payment of the entire balance or the payment of one-sixth of the principal

each year, but it is quite apparent that there was contemplated an outstanding balance of part at least of the principal for six years bearing interest annually. It is contended by the defendants that this ambiguous provision could have been clarified by oral evidence that Mr. Cook contemplated equal payments of principal each year. In any event, the escrow papers departed fundamentally from the express wishes of Mr. Cook by providing that Mr. Hutchinson could pay $5,000 *"or more"* each year. If such a provision had been inserted in the sale papers, it is obvious that Mr. Hutchinson could have paid the entire amount of the deferred balance of $30,000 on any annual payment date. The opinion in *Born* v. *Koop,* 200 Cal.App.2d 519 [19 Cal.Rptr. 379], supports the conclusion that there was thus a fundamental difference between the terms that Mr. Cook would have been willing to accept and the terms under which Mr. Hutchinson offered to purchase the property. It may be important to a seller to have part of the purchase price outstanding for a term of years on annual interest. Such a provision may also be of moment from the standpoint of the seller's obligation to pay income taxes. In any event, there was not an unqualified acceptance of the terms of the alleged offer, according to the appellants. As is said in section 1585 of the Civil Code: "An acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest, and which will conclude the person accepting. A qualified acceptance is a new proposal." (See *American Aero. Corp.* v. *Grand Central Aircraft Co.,* 155 Cal.App.2d 69, 79 [317 P.2d 694].) ▮ A counteroffer is a rejection of a previous offer. (*People* v. *Twedt,* 1 Cal.2d 392, 397 [35 P.2d 324].) This issue, also, is *contra* to the holding of the trial court.

▮ The respondent claims that the counteraffidavit is not sufficient in form in that it does not explicitly state that Mr. Cook could testify to the facts set forth; however, the document does show that Mr. Cook was necessarily acquainted with the details of his conversation with Mr. Mealey relative to the time when, if at all, the real estate listing would be effective, and, obviously, he could testify to such conversations. With respect to the ambiguity of the listing contract, he could also give evidence concerning the factors discussed by the parties and the surrounding circumstances at the time he signed the listing agreement. (See *Snider* v. *Snider,* 200 Cal.App.2d 741 [19 Cal.Rptr. 709]; *Whaley* v. *Fowler,* 152

Cal.App.2d 379 [313 P.2d 97]; *Dryer* v. *Dryer*, 231 Cal. App.2d 441, 449 [41 Cal.Rptr. 839]; *Schessler* v. *Keck*, 138 Cal.App.2d 663 [292 P.2d 314].)

The judgment is reversed.

Brown (R.M.), J., concurred.